UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
BROWARD DIVISION

CASE NO. 20-60159-CR-RAR

UNITED STATES OF AMERICA

vs.

TIARA WALKER,

    Defendant.
                                           /

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its undersigned counsel, hereby submits this Sentencing Memorandum as to Defendant Tiara Walker (the "Defendant"). The Defendant is presently set for sentencing before the Court on July 13, 2021 for her conviction by guilty plea to one count of conspiracy to commit wire fraud, in violation of Title 18, United State Code, Section 371. The offense stems from the Defendant's receipt a fraudulent Paycheck Protection Program ("PPP") loan of $258,575 on behalf of her company, Utilization Review Pros, LLC ("URP").

For the reasons set forth herein, the United States respectfully recommends that the Court sentence the Defendant to a term of imprisonment of 18 months, to be followed by three years of supervised release.[1]  A sentence of 18 months' imprisonment represents the bottom of the applicable range of the United States Sentencing Guidelines (the "Guidelines") as calculated by the United States Probation Office ("Probation") in the final draft of the Presentence Investigation

---

[1] The United States is also seeking forfeiture of $258,575 and restitution of $258,575, consistent with the Plea Agreement [ECF No. 41 ¶¶ 13, 17]. On May 7, 2021, the Court entered a Preliminary Order of Forfeiture [ECF No. 49]. The Defendant has also agreed to pay a special assessment of $100 [ECF No. 41 ¶ 5].

Report, disclosed July 6, 2021 [ECF No. 56] (the "PSR"), to which the government has no objection. Furthermore, the sentence recommended herein by the United States will provide punishment for the offense of conviction that is sufficient, but not greater than necessary, to accomplish the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

## I.  FACTUAL BACKGROUND

In early 2020, as the COVID-19 pandemic spread across the country and disrupted everyday life, causing illness, death and economic distress, the U.S. government assembled relief programs to help those whose livelihoods were jeopardized. One of those programs was the PPP. Against this backdrop, the Defendant and her co-conspirators participated in a scheme to obtain by fraud millions of dollars in forgivable loans through the PPP, and have done so by conspiring with a person now cooperating with the investigation ("Individual 1") and others, including Damion McKenzie ("McKenzie"). The Defendant obtained a fraudulent PPP loan for her own company, URP, with Individual 1 providing falsified documents and submitting the application on the Defendant's behalf in exchange for a kickback from the loan proceeds. To inflate the size of these PPP loans, and the corresponding kickbacks, the conspirators relied on a variety of false statements, including by submitting falsified bank statements and payroll tax forms.

### A.  The CARES Act

In March 2020, in response to the many challenges presented by the pandemic, Congress passed the CARES ACT, Pub. L. 116-136, which created the PPP. The PPP authorized $349 billion in forgivable loans to small businesses to be used for payroll, mortgage interest, rent/lease payments, or utilities. In April 2020, Congress authorized an additional $310 billion for PPP funding. These funds were designed to address the unprecedented crisis facing Americans—

especially business owners whose livelihoods were threatened by the public health emergency. PPP funds were designed as a lifeline.

The program was designed to provide funds quickly and easily to qualifying individuals. PPP loans were not dispensed through any government bureaucracy; funds were distributed by banks who had existing relationships with many of the people in need. To apply, individuals submitted an application to a participating financial institution along with supporting documentation as to the business's payroll expenses. The supporting documentation requirement was minimal, and could be satisfied with one years' worth of the company's tax records. If a PPP loan application was approved, the participating financial institution funded the PPP loan using its own monies, which were 100% guaranteed by the Small Business Administration ("SBA").

**B.     Overview of Defendant's Conduct**

A more detailed recitation of the facts relating to the scheme are detailed in the Information (ECF No. 22), Defendant's factual proffer statement (ECF No. 42), and the PSR (ECF No. 56).

Beginning in May 2020 through in or around at least July 2020, the Defendant conspired with Individual 1, McKenzie, and others to obtain by fraud a PPP loan on behalf of URP, a Florida limited liability company that the Defendant established in 2019.

In furtherance of the conspiracy, the Defendant caused the submission of a PPP loan application on behalf of URP that the Defendant knew contained materially false and fraudulent representations, including both the number of employees that URP had during each quarter of 2019 and the amount of wages paid by URP during each quarter of 2019. Specifically, on May 16, 2020, the Defendant signed and dated four (4) Internal Revenue Service ("IRS") Forms 941 (titled, "Employer's Quarterly Federal Tax Returns"), that is, one for each quarter of 2019 (collectively,

the "Forms 941"), each of which falsely represented that URP had 12 employees and paid $310,290.60 in quarterly wages, tips, and other compensation, during each quarter of 2019. In fact, the Defendant was the sole employee of URP.

After signing and dating the Forms 941, the Defendant sent the Forms 941 to Individual 1 knowing that Individual 1 would use the Forms 941 and falsified information contained therein to apply for a PPP loan for URP. Furthermore, on May 17, 2020, the Defendant electronically signed a PPP loan application form on behalf of URP, which falsely represented that URP had 12 employees and an average monthly payroll of $103,430.

Bank Processor 1 approved and funded a PPP loan for URP in the amount of $258,575. Thereafter, the Defendant paid kickbacks to Individual 1 in the amount of $64,645, and to McKenzie in the amount of $45,000.

## II.   PROCEDURAL HISTORY

On September 3, 2020, the Defendant was charged by complaint with conspiracy to commit wire fraud and bank fraud, in violation of Title 18, United States Code, Section 1349, wire fraud, in violation of Title 18, United States Code, Section 1343, and bank fraud, in violation of Title 18, United States Code, Section 1344 [ECF No. 3]. Following waiver of indictment, on December 22, 2020, the Defendant was charged in an Information with conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 371 [ECF No. 22]. The Defendant pleaded guilty before this Court to the Information pursuant to a written plea agreement on March 26, 2021 [ECF No. 41]. Sentencing is presently scheduled for July 13, 2021.

### III. SENTENCING GUIDELINES CALCULATIONS

As explained below, the United States submits that the Defendant's Total Offense Level is 15. At Criminal History Category I, this produces an advisory Guidelines range of 18-24 months of imprisonment pursuant to the Sentencing Table in Chapter 5, Part A of the Guidelines.

#### A. The PSR Correctly Computes the Offense Level

As set forth in the PSR, Probation computes the Total Offense Level at 15 (PSR ¶¶ 34-43). The United States concurs with the Offense Level computation in the PSR, which is as follows:

| | |
|---|---|
| Base Offense Level, § 2B1.1(a)(2) | 6 |
| Loss greater than $250,000 but less than $550,000, § 2B1.1(b)(1)(C) | 12 |
| Production of trafficking of any unauthorized access device, § 2B1.1(b)(11) | 18 |
| Acceptance of Responsibility and Timely Notification § 3E1.1(a) and (b) | (3) |
| **Total Offense Level** | **15** |

The Defendant does not dispute that these Guidelines provisions are applicable to her. The only component of the Guidelines computation in the PSR to which the Defendant objects is that Probation does not recommend a mitigating role adjustment under Section 3B1.2. In her written objections to the PSR, filed July 3, 2021 (ECF No. 54), the Defendant argues that she is entitled to 2-level reduction pursuant to Section 3B1(b). As explained below, the Defendant is not entitled to any mitigating role adjustment.

#### B. Defendant is Not Entitled to a Mitigating Role Adjustment.

The Defendant's role in the offense to which she has accepted responsibility and pleaded guilty does not warrant any mitigating role adjustment. The Defendant is being sentenced for


participating in a conspiracy to defraud the PPP program in which the Defendant caused the submission of a fraudulent PPP loan application for her own company and received (and spent) the proceeds of the fraudulent PPP loan. Her role in that offense is not minor. Rather, the Defendant was central to the relevant conduct for which she is being held accountable. The Defendant was the one who received the proceeds of the fraudulent loan for her company and paid a portion of those proceeds as kickbacks to her co-conspirators. While Individual 1 and others working with him orchestrated and carried out the scheme, and co-conspirators like McKenzie recruited others to join, the Defendant ultimately is the person who said yes to the fraud that her co-conspirators were offering. Put differently, but for the Defendant's role in the offense, the Defendant's fraudulent PPP loan would not have existed.

The Defendant argues that her role should be viewed relative to the overall conspiracy and the roles of Individual 1 and McKenzie [ECF No. 54 at 3-4]. This is legally incorrect for at least two reasons. First, the Defendant is not being held responsible for the entire loss resulting from the overall conspiracy. As the Defendant recognizes (ECF No. 54 at 3), this conspiracy involved over 90 fraudulent PPP loans and caused an intended loss in the tens of millions of dollars. However, the Defendant is being held accountable only for the role that she played as to her own loan and the resulting loss she directly caused therefrom. As the Eleventh Circuit has explained, a defendant "cannot show that she is entitled to a role adjustment by pointing to the broader scheme for which she was not held accountable. We only consider that she played an essential role in the relevant conduct that was attributed to her." *United States v. Milton-Browner*, 496 F. App'x 979, 981 (11th Cir. 2012). Second, the fact that the Defendant had a less significant role than the other participants does not entitle her to a mitigating role adjustment. In other words, the fact that the

6

Defendant did not have an aggravating role in the offense is not grounds for a mitigating role. *See id.* at 982 ("the fact that [defendant] had a less significant role than the other participants does not entitle her to a role adjustment.")  Based on the facts and of this case, Probation correctly determined that no upward or downward role adjustment is warranted for the Defendant.

Finally, as the Guidelines note, determining whether to apply a mitigating role is heavily dependent upon the facts of the particular case, and the Court should consider a list of non-exhaustive factors set forth in Application Note 3(C) to § 3B1.2.  Several of those factors weigh *against* a reduction for a mitigating role, most notably that (1) the Defendant directly performed several acts in the criminal activity, including forging documents and sending them to Individual 1 so that Individual 1 could submit the fraudulent PPP loan application for the Defendant's company; and (2) the Defendant stood to benefit from the criminal activity, and did benefit, having received the entirety of the fraudulent loan proceeds.  That the Defendant did not "live a flashy lifestyle with stolen money" does not diminish her role in the offense, as she claims (ECF No. 54 at 5).  This is not a case where the Defendant performed certain tasks for others for which she did not benefit, nor is the Defendant substantially less culpable than other participants whose primary role was applying for and receiving a fraudulent PPP loan for themselves.

In sum, there is no legal or factual basis to apply a mitigating role adjustment under § 3B1.3.  Accordingly, the Court should adopt the Guidelines computation recommended by United States and Probation as set forth in the PSR.

**IV.      CONSIDERATION OF SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A)**

Title 18, United States Code, Section 3553(a), enumerates several factors that the Court shall consider in sentencing a defendant. As addressed in turn below, the 3553(a) factors relevant to the Defendant support the sentence recommended by the United States.

**A.      Nature and Circumstances of the Offense**

This was a serious offense. In 2020, as the COVID-19 pandemic spread across the country causing illness, death and economic distress, the government created PPP loans to help small business owners and their employees whose livelihoods were jeopardized. The Defendant took advantage of the program by submitting a false application claiming to have employees and payroll that did not exist. Her application was supported by false tax forms, which she backdated and signed herself, and a fictitious bank statement. The Defendant's willful participation in this serious criminal conduct warrants a sentence of imprisonment within the advisory Guidelines range. The United States' recommended sentence of 18 months' imprisonment, which is at the bottom of the Guidelines range, is sufficient but not greater than necessary to accomplish this goal.

**B.      History and Characteristics of the Defendant**

The Defendant is a 38-year-old woman who founded URP in 2019 to allow her to work from home as an independent contractor while serving in the utilization review department of a medical billing company [ECF No. 56 (PSR) ¶ 65]. The Defendant has been romantically involved with co-conspirator McKenzie, and the two of them have two children. (*Id.* ¶ 53.) The Defendant has no criminal history points. (*Id.* ¶ 46.)

The Defendant agreed to plead guilty before being indicted, and thus deserves credit for accepting responsibility early and saving the government considerable resources in preparing for

trial. The sentence recommended by the United States reflects such acceptance because it is within the Guidelines produced by the Offense Level that has been adjusted downward by three levels for acceptance of responsibility pursuant to Section 3E1.1(a) and (b).

### C. Need for the Sentence to Afford Adequate Deterrence to Criminal Conduct and Protect the Public from Further Crimes of the Defendant

The sentence in this case should address a need for both general and specific deterrence. As to general deterrence, the Eleventh Circuit has explicitly stated that "general deterrence is an important factor in white-collar cases, where the motivation is greed." *United States v. Hayes*, 762 F.3d 1300, 1308 (11th Cir. 2014). As explained above, this case was motivated by greed at time when millions of Americans were suffering from the economic impact of a global pandemic. As the pandemic spread, so too did fraud related to the PPP program and other programs designed to provide critical economic assistance—especially in the Southern District of Florida. The government's recommended sentence of imprisonment in this case is thus appropriate to provide both specific and general deterrence. Such a sentence will send a clear message to the Defendant and other offenders that there are serious consequences for defrauding government pandemic relief programs. Indeed, as the pandemic continues to impact small businesses, the PPP loan program remains ongoing. Actors like the Defendant who seek to defraud these programs not only drain the program of limited funding, they make it more difficult for administrators of government and other relief programs to get aid to individuals that qualify for and need it. The Defendant's sentence will serve as a warning and deterrent to others inclined to exploit pandemic relief programs.

Furthermore, a sentence at the bottom of the Guidelines range is sufficient to protect the public from future crimes of this Defendant who has no prior convictions. With this sentence, the government believes the risk of recidivism is low.

**D.     Need for the Sentence to Avoid Unwarranted Sentencing Disparities**

The sentence recommended by the United States will not create an unwarranted sentencing disparity. There are two relevant points of comparison to avoid unwarranted sentencing disparities: sentences associated with others convicted of PPP related fraud, and the sentences of co-conspirators in this case. While a relatively small number of defendants have been sentenced to date for offenses related to PPP fraud, judges of this Court and of other Districts have imposed sentences with significant terms of imprisonment. *See, e.g.*, *United States v. Ioannis Kralievits*, Case No. 21-20157-CR-Altonaga (S.D. Fla. June 30, 2021) (sentencing cooperating defendant to 19-month term of imprisonment (following reduction pursuant to 5K1.1) in connection with two fraudulent PPP loans totaling approximately $824,750); *United States v. David Hines*, Case No. 21-20011-CR-Cooke (S.D. Fla. May 12, 2021) (imposing 78-month term of imprisonment for defendant responsible for a loss of $3.9 million resulting from multiple fraudulent PPP loans); *United States v. Ganell Tubbs*, 20-00193-CR-Miller (E.D. Ark.) (imposing 41-month term of imprisonment for defendant responsible for loss of $1.9 million resulting from two fraudulent PPP loans).

The Defendant is the first of the conspirators in this scheme to be sentenced. The loss amount of $258,575 attributable to the Defendant is an important measure of her relative culpability as compared to co-conspirators in a scheme involving over 90 fraudulent loan applications and over $34 million in intended losses. That is, the co-conspirators that referred others to the scheme or were involved in preparing or submitting multiple fraudulent loan

applications will be responsible for a greater intended loss amounts, and a correspondingly higher advisory Guidelines range under Section 2B1.1. A sentence of 18 months for this Defendant, who is being held responsible only for the loss associated with her single fraudulent loan, will provide a consistent framework for future sentences of co-conspirators in this conspiracy whose Guidelines correlate to the losses for which they are directly responsible, even if those losses are greater.

## V.     RESTITUTION & FORFEITURE

Restitution is mandatory in this case pursuant to 18 U.S.C. § 3663A(a)(1). As set forth in the Plea Agreement [ECF No. 41 ¶ 17], the United States and the Defendant have agreed that the Defendant owes restitution in the amount of $258,575, which represents the loss to Bank 1 as a result of the Defendant's participation in the conspiracy. Restitution is owed joint and severally with the Defendant's co-conspirators charged in at least the following related cases: 20-60139-CR-Dimitrouleas (S.D. Fla.) and 20-4215-MJ-Greenberg (N.D. Oh.).

Furthermore, pursuant to the Plea Agreement, the Defendant agreed to the forfeiture of the approximately $28,940.87 formerly on deposit in account number 1100014085066 at Truist Bank (formerly BB&T) held in the name of URP (the "Account") and a forfeiture money judgment in the amount of $258,575.00 [ECF No. 41 ¶ 13]. On May 7, 2021, the Court entered a preliminary order of forfeiture in which the Court entered a forfeiture money judgment of $258,575.00 and found, pursuant to 18 U.S.C. § 982(a)(2)(A), that the Account is forfeited and vested in the United States of America [ECF No. 49].

<p style="text-align:center">*          *          *</p>

## CONCLUSION

For the forgoing reasons, the United States respectfully recommends that the Court sentence the Defendant to a term of imprisonment of eighteen (18) months, to be followed by a term of supervised release of three (3) years. The United States also requests that the Court order restitution, forfeiture, and a special assessment, consistent with the Plea Agreement [ECF No. 41] and the point and authorities discussed herein.

Respectfully Submitted,

| | |
|---|---|
| JUAN ANTONIO GONZALEZ<br>ACTING UNITED STATES ATTORNEY | JOSEPH S. BEEMSTERBOER<br>ACTING CHIEF, FRAUD SECTION |
| By: /s/ *David A. Snider*<br>DAVID A. SNIDER<br>Assistant United States Attorney<br>Court ID No. A5502260<br>500 E. Broward Blvd.<br>Fort Lauderdale, FL 33394<br>Tel: (954) 660-5696<br>Fax: (954) 695-0651<br>Email: david.snider@usdoj.gov | By: /s/ *Philip B. Trout*<br>PHILIP B. TROUT<br>Trial Attorney, Fraud Section<br>U.S. Department of Justice<br>1400 New York Ave NW<br>Washington, DC 20530<br>Tel: (202) 616-6989<br>Fax: (202) 514-3708<br>Email: philip.trout@usdoj.gov |